394 P.2d 998

**ALBUQUERQUE METROPOLITAN ARROYO FLOOD CONTROL AUTHORITY, Petitioner-Appellee,**

v.

Bernard H. SWINBURNE, Secretary-Treasurer of Albuquerque Metropolitan Arroyo Flood Control Authority, Defendant-Appellant,

R. D. Borden, Dr. T. L. Carr, Nat G. Capeless and John E. McNerney, Intervenors-Appellants.

No. 7614.

Supreme Court of New Mexico.

Aug. 24, 1964.

Thomas O. Olson, Philip R. Ashby, Albuquerque, for appellants.

Albert T. Ussery, Peter Gallagher, Albuquerque, for appellee.

NOBLE, Justice.

The appellee, Albuquerque Metropolitan Arroyo Flood Control Authority, was created and organized under and in compliance with Ch. 311, Laws of 1963, §§ 75–36–1 to 103, N.M.S.A.1953, and pledged its cooperation with the United States in flood control of the area within its boundaries. Its directors were duly appointed by the Governor of the State of New Mexico and, pur-

suant to the Act, were then regularly elected. A $9,500,000.00 bond issue by the Authority was approved by a majority of the qualified electors voting at an election called for that purpose.

The Flood. Control Authority brought its action for a declaratory judgment to determine the constitutionality of the Act; the validity of its proceedings pursuant to the statute; and of the bonds proposed to be issued; and, to require its secretary-treasurer, appellant, to advertise the bonds for sale. This appeal is from a judgment declaring the statute constitutional; determining the acts of the Authority and the proposed bonds to be valid; and directing advertising of the bonds for sale.

The first five of appellant's points relied upon for reversal are combined under the single question of whether the Arroyo Flood Control Act of 1963 contravenes that portion of Article IV, Sec. 24, of the New Mexico Constitution, which reads:

> "Sec. 24. [Local or special laws.]
> "* * * In every other case where
> a general law can be made applicable,
> no special law shall be enacted."

We think it cannot seriously be doubted that the Act does not have a uniform operation throughout the State and is a special law enacted by the legislature for the express purpose of acquiring and operating a flood control system to benefit the property within the boundaries expressly specified in the Act.

◾ The distinction between a general and a special law was pointed out in Scarbrough v. Wooten, 23 N.M. 616, 170 P. 743, where it was said that "[a] 'general law' is one that relates to a subject of a general nature, or that affects all the people of the state, or all of a particular class," while "one relating to particular persons or things of a class is special." Accord, State v. Atchison T. & S. F. Ry., 20 N.M. 562, 151 P. 305. Manifestly, an act which creates and establishes a flood control district by legislative act, fixing its boundaries by specific description so as to constitute a single compact geographic area, is a special law. State ex rel. Anderson v. Hodgson, 183 Kan. 272, 326 P.2d 752.

◾ Merely because a legislative act is special in its application, however, does not necessarily make it in violation of the constitutional restriction. Sutherland, Statutory Construction (2nd Ed.) § 190. The enactment of local or special laws in certain enumerated instances not applicable here is prohibited, and the Constitution then further enjoins the legislature from passing special laws where a general law can be made applicable. Scarbrough v. Wooten, supra. Accordingly, when a general law cannot be made applicable, but a law is required, special laws are permissible. In such instances, it is not necessary to make

the act appear general when its application is intended to be special. Water Dist. No. 1 of Johnson County v. Robb, 182 Kan. 2, 318 P.2d 387. There is nothing in the Constitution which would invalidate a legislative act merely because it is special in character provided a local situation exists which under particular facts makes a general law inapplicable. Scarbrough v. Wooten, supra.

The legislature recognized that in enacting the flood control act, it was passing a special law, but expressly determined that a general law could not be made applicable under the particular, special and atypical conditions of the area sought to be protected from flood damage. By legislative declaration in the Act itself, § 75–36–2(F), N.M.S.A.1953, 1963 Pocket Supp., it was said:

> "That a general law cannot be made applicable to the designated flood control system and the provisions herein appertaining thereto because of a number of atypical and special conditions concerning them."

What the Oklahoma court, in Chickasha Cotton Oil Co. v. Lamb & Tyner, 28 Okl. 275, 114 P. 333, characterized as the weight of the decided cases is that the judgment of the legislature, as indicated by the enactment of a special law, is conclusive that a general law cannot be made applicable and that such legislative determination is not subject to judicial review. The territorial Supreme Court in Sears v. Fewson, 15 N.M. 132, 103 P. 268, construing the Act of Congress commonly known as the "Springer Act," which limited the legislature, as does the constitutional provision supra, said that the judgment of the legislature as to whether a general law could be made applicable is final and not subject to judicial review, citing Guthrie Nat. Bank v. City of Guthrie, 173 U.S. 528, 19 S.Ct. 513, 43 L.Ed. 796. For other cases of jurisdictions so holding, see Valley Nat. Bank of Phoenix v. Glover, 62 Ariz. 538, 159 P.2d 292; Sommers v. Patton, 399 Ill. 540, 78 N.E.2d 313. Also, cases which arrived at the same result, at least in the absence of a clear abuse of discretion by the legislature, include McClain v. People, 111 Colo. 271, 141 P.2d 685; State v. Carter, 30 Wyo. 22, 215 P. 477, 28 A.L.R. 1089. In Scarbrough v. Wooten, supra, this court cited Sears v. Fewson, supra, and quoted the rule there announced. It did in fact determine that the legislation there being reviewed was a proper special act since a general act could not be made applicable.

Many states, recognizing that the question is one for the legislature in the first instance, permit judicial review of the legislative decision if the disregard of the constitutional requirement is clear and palpable so that the court can see from the face of the act or from facts of which it takes judicial cognizance that enactment of a special law is unnecessary. Ventura

County Harbor Dist. v. Bd. of Sup'rs, 211 Cal. 271, 295 P. 6; Elliott v. Sligh, 233 S.C. 161, 103 S.E.2d 923. Also, see Richman v. Bd. of Sup'rs, 77 Iowa 513, 42 N.W. 422, 4 L.R.A. 445, 14 Am.St.Rep. 308. Some states formerly following the general rule now permit judicial review if there is a palpable abuse of discretion by the legislature. Heckler v. Conter, 206 Ind. 376, 187 N.E. 878; Ford v. State, 183 Okl. 386, 82 P.2d 1045. Arkansas and Kansas, formerly committed to the rule that the legislature is the exclusive judge of whether a general law is possible, have adopted constitutional amendments, in Arkansas expressly forbidding any local or special law, Simpson v. Matthews, 184 Ark. 213, 40 S.W.2d 991, and in Kansas making it the duty of the courts to determine the constitutionality of acts without reference to a legislative declaration. Water Dist. No. 1 of Johnson County v. Robb, supra.

It is clear that under whichever approach is applied, this legislation is constitutional and is not a special law where a general one could be made applicable.

Upon the facts in the instant case, as found by the trial court, it is apparent that there is no area in the state in which the conditions producing the flood problem resemble those of the area described in this Act. It is apparent that in the Albuquerque area the flood conditions result largely from the density of population preventing the rain waters from dispersing, and channelling them into the arroyos in the lower areas. No other area of the state has such a heavy concentration of improvements which cause the water to run off in such volume. No other area is so situated that there are no channels or other available devices to carry off the water which accumulates in the arroyos from the higher areas of dense population and improvements. No other area in the state was required to raise such a large amount of money to meet federal demands for local participation with the federal government to handle such flood conditions.

It was these special, unique and atypical conditions existing in the area described in this Act which gave rise to enactment of the Arroyo Flood Control Act under which the appellee-district was created. Such conditions support the legislative action in providing a flood control district with authority to join with the federal government to meet the needs of that area. It was not necessary to attempt to accomplish the result under the guise of general legislation which would in fact be local or special in its application. Water Dist. No. 1 of Johnson County v. Robb, supra. See, also, Borden Company v. Thomason (Mo.) 353 S.W. 2d 735. In fact, the trial court found in effect that general laws theretofore enacted (§§ 75–19–1 to 44, N.M.S.A.1953) were not effective to cope with the flood control problem of this particular area. It is ap-

parent that a general law could not have been made applicable.

Appellant groups points 6, 7 and 8 under the single contention that Sec. 4, Art. XVI of the New Mexico Constitution, reading:

"The legislature is authorized to provide by law for the organization and operation of drainage districts and systems[,]"

prohibits any agency but a "drainage district" from dealing with the problem of excess surface water.

There is however, nothing in the constitutional provision relied upon which requires legislation pertaining to the removal of excess water from the surface of an area to refer to or designate the authority for such water control as a "drainage district." The authority created by the Arroyo Flood Control Act in question is undoubtedly one dealing with the drainage of excess water from the area specified in the Act. We find nothing in Art. XVI, Sec. 4, of the Constitution which prohibits enactment of this law.

We cannot agree with appellant's contention that the boundaries of the Flood Control Authority were arbitrarily and capriciously fixed by the legislature nor that the Act contravenes the due process clause. The trial court found the contrary to be the fact, and a careful review of the record discloses substantial support in the evidence for the finding. An appellate court will not disturb a finding so supported. Dodson v. Eidal Mfg. Co., 72 N.M. 6, 380 P.2d 16; Hamilton v. Doty, 71 N.M. 422, 379 P.2d 69; Trujillo v. Clark, 71 N.M. 288, 377 P.2d 958.

The legislature created the Albuquerque Metropolitan Arroyo Flood Control Authority as an instrumentality of the state government with such corporate power and delegated authority as the legislature has seen fit to confer upon it. Such power and authority must, of course, be exercised in the manner and only for the purposes prescribed by the legislative enactment. Bibo v. Town of Cubero Land Grant, 65 N.M. 103, 332 P.2d 1020; Fancher v. Bd. of Commissioners, 28 N.M. 179, 210 P. 237. The fact that there may be residents or property owners in some portions of the area who receive a greater benefit than others, or that some actually receive no benefit from the improvements and are in no apparent danger of damage from floods, cannot stand in the way of a general governmental policy declared by the legislature in the interest of the public welfare and benefit. State ex rel. Bowman v. Bd. of Com'rs of Allen County, 124 Ohio St. 174, 177 N.E. 271; Keene v. Jefferson County, 135 Ala. 465, 33 So. 435.

The fact that certain properties are situate on high ground and in no danger from flood damage is not to say that such

property should not pay its share of the cost of flood control. It is quite apparent, as found by the trial court, that the density of population of these higher areas with the equal density of improved structures, streets and other improvements, causing the surplus rain waters to run off to the lower area, materially contributes to the flood condition and to the property damage in the lower areas. The contention that such property owners who contribute to the problem are deprived of their property by due process of law by reason of being taxed to control that condition is untenable. Ramsey v. Rollins, 246 N.C. 647, 100 S.E.2d 55. Absolute equality is impracticable in taxation and is not required by the due process of law or the equal protection clauses of the Constitution. The burdens here fall alike upon all taxpayers within the boundaries established by the legislature in proportion to the valuation of their properties. This Act does not deprive the owners of their property without due process of law, nor does it deny them the equal protection of the law. Ramsey v. Rollins, supra; Kocsis v. Chicago Park Dist., 362 Ill. 24, 198 N.E. 847, 103 A.L.R. 141; State ex rel. Logan v. North Topeka Drainage District, 133 Kan. 274, 299 P. 637; Davy v. McNeill, 31 N.M. 7, 240 P. 482.

Appellants present the question whether Art. IX, Sec. 13, of the New Mexico Constitution limits the total indebtedness which any and all municipal corporations with overlapping boundaries may incur, and argue that a constitutional barrier is presented to the validity of the flood control authority incurring the indebtedness represented by these proposed bonds. The constitutional provision immediately pertinent is:

"No county, city, town or village shall ever become indebted to an amount * * *, exceeding four per centum on the value of the taxable property within such county, city, town or village, * * *."

It is argued that Sections 10, 11 and 12 of the same article should be considered in pari material with Sec. 13. Section 10 only prohibits counties from borrowing money except for certain specified purposes. Section 11 prohibits school districts from becoming indebted except for the purposes specified therein, and limits the total indebtedness of school districts to six per cent of the assessed value of the district. Section 12 prohibits cities from contracting any debt except by irrepealable ordinance providing for a tax levy to retire the debt, and after referendum by the taxpaying electors.

It is clear that the indebtedness proposed by the Flood Control Authority is not one contracted by either a county, city, town or village or school district, but is one imposed by a special quasi-municipal corporation under legislative authority. The legislature has plenary legislative authority lim-

ited only by the state and federal constitutions. Legislation may be validly enacted if not inhibited by one or the other of these documents. Floyd v. Parker Water & Sewer Sub-District, 203 S.C. 276, 17 S.E.2d 223; State ex rel. Harvey v. Medler, 19 N.M. 252, 142 P. 376.

 It is well established that counties, municipalities and school districts, even though with overlapping boundaries, are authorized to each create indebtedness, if within its own constitutional limitation, but without regard to either the limitations imposed upon such other overlapping political unit or to the total indebtedness of all such units. It is equally well established that the legislature has power to create other political subdivisions for a public purpose. Constitutional limitations upon the legislative power respecting governmental subdivisions as well as the debt limit thereof have application only to the particular subdivision named in the respective inhibiting constitutional provision. Gutierrez v. Middle Rio Grande Conserv. Dist., 34 N.M. 346, 282 P. 1, 70 A.L.R. 1261; Board of Education of Town of Eddy v. Bitting, 9 N.M. 588, 58 P. 395; Russell v. Middletown City School Dist., 101 Conn. 249, 125 A. 641; Ashmore v. Greater Greenville Sewer Dist., 211 S.C. 77, 44 S.E.2d 88, 173 A.L.R. 397.

 Finally, it is argued that, if for no other reason, the Act is invalid because it fails to establish a limitation upon the amount of indebtedness the Flood Control Authority may incur. No authority is cited in support of the contention. We do not agree with appellant's position. The constitution places no restraints upon the power of the legislature to authorize indebtedness for a public purpose by a subdivision of state government except those imposed upon counties, municipalities and school districts. When Sections 10, 11, 12 and 13 of Art. IV of the Constitution are considered together, it appears that its framers intended to apply debt limitations only to the specified governmental subdivisions and to leave to the sound discretion of the legislature whether to limit other government agencies created by the legislature.

 We think, under the facts here present, the legislature may constitutionally create a special district of designated territory of the state and authorize it to issue bonds and construct and operate a flood control system for the purposes stated in the legislation now being considered and that the debt limitations provided by Art. IX of the Constitution are not applicable to the authority created by Ch. 311 of the Laws of 1963.

It follows that the judgment appealed from should be affirmed.

It is so ordered.

COMPTON, C. J., and CARMODY, CHAVEZ and MOISE, JJ., concur.